## FERRY v. UNITED STATES,
### and four other cases.

(Circuit Court of Appeals, Third Circuit. July 18, 1923. Rehearing Denied October 4, 1923.)

Nos. 2990–2994.

**1. Intoxicating liquors ⊂⟹238(2)—Evidence of sales in proprietor's absence held to carry charge of maintaining nuisance to jury.**

Evidence that bartender sold beer and whisky in defendant's barroom and placed the money in defendant's cash register, and that other liquor belonging to defendant was on the premises, warranted inference that the bartender was defendant's representative, though defendant was not present, and made case for jury as to defendant's maintenance of a nuisance under Prohibition Act, tit. 2, § 21.

**2. Intoxicating liquors ⊂⟹236(11)—Evidence held to support conviction.**

Evidence on trial of bartender for selling liquor *held* sufficient to support a conviction.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

James W. Ferry, John Tunaitis, Alexander Gudaitis, Ernest Lipke, and Joseph Munzo were convicted of offenses against the prohibition law, and they separately bring error. Affirmed.

In Nos. 2992–2994:
John F. McEvoy and Edward S. Kremp, both of Philadelphia, Pa., for plaintiffs in error.

George W. Coles, U. S. Atty., and Henry B. Friedman, Asst. U. S. Atty., both of Philadelphia, Pa.

In Nos. 2990, 2991:
H. Horace Dawson and Lincoln L. Eyre, both of Philadelphia, Pa., for plaintiffs in error.

Henry B. Friedman, Asst. U. S. Atty., of Philadelphia, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

James Ferry—No. 2994.

BUFFINGTON, Circuit Judge. This writ of error was taken by James Ferry, who was convicted and sentenced on an indictment containing a count for illegally selling intoxicating liquor and one for maintaining a nuisance, in violation of the National Prohibition Law. An examination of the record shows that, in so far as the questions now raised in this court are concerned, no timely exceptions, or even objections, were made in the court below; but, inasmuch as the case is here, we have examined it, and now decide as though it were properly before us. As the particular sentence imposed was justified by either count of the indictment, we will limit ourselves to considering the nuisance count, and our inquiry will be whether there was sufficient evidence to justify the court submitting the case to the jury on such count. The latter is based on section 21 of title 2 of the Prohibition Act, 41 U. S. Stat. 305, which provides:

"Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title,

and all intoxicating liquor and property kept and used in maintaining the same is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both. If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure, or place is occupied or used for the manufacture or sale of liquor contrary to the provision of this title, and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure, or place shall be subject to a lien for and may be sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation, and any such lien may be enforced by action in any court having jurisdiction."

[1] The proofs show that James Ferry was the owner of certain premises in the city of Philadelphia, which he had fitted up for a bar. It was provided with a bar counter and a cash register. Ferry's testimony was that on May 1, 1922, he was himself tending bar the entire day, and in the evening he was relieved by a colored man, who worked at night. He testified that, other than himself and the colored man, no one worked at or tended his bar. On the other hand, two officers of the Revenue Department testified that at a certain hour on that day they were served by a white man, who was tending the bar, with beer and whisky, which latter was poured from a bottle by the officers, taken away, analyzed, and proved to be whisky. A few days later a search warrant was issued, and in the cellar of the premises, as well as behind the bar, were found liquors in substantial quantities and different varieties, and some of the bottles found behind the bar were of the same kind as those found in the cellar. The agents testified that the money given for the whisky was placed in the cash register by the bartender and the change given them taken therefrom. They testified that after drinking the beer they called for whisky and it was served in regular whisky glasses. Ferry testified he never had a white bartender in his employ.

The jury saw the witnesses; they evidently did not believe Ferry, and did believe the two men who contradicted him; and the case is not argued before us on the theory that we are to take the proof of these two government witnesses as true, and that it shows Ferry was not in the saloon the day of their visit, did not sell the whisky personally, and therefore could not be convicted. While the facts are as above stated, it by no means follows that Ferry was not properly convicted of the charge of maintaining a statutory nuisance. The house was Ferry's, the liquor found on the premises was his, the liquor found behind the bar was his, and that served over the bar to the two witnesses was his, and the money paid for it was placed in the cash register, and presumably that registered money eventually reached him. The fact is the jury, who saw the witnesses and judged of their credibility, did not believe Ferry's account, and, in view of the successful contradiction of his story of himself tending bar the whole of the day in question, the jury was quite warranted in believing that the white man who sold Ferry's whisky, registered the transaction, and placed the price of the whisky in Ferry's till was the representative of Ferry on the latter's premises.

So viewing the case, we are of opinion the court, in the light of that evidence, committed no error in sending the case to a jury, instead of

directing them as a matter of law to find Ferry not guilty; for, if such was the law, all a violator need do would be to furnish the premises, the illegal liquor, and the equipment for doing business, and keep out of sight when the barkeeper was doing what the proprietor of the place wanted, meant, and placed him there to do, for truly the law is not so blind to the real state of things as to allow any such course of conduct to prevail.

The judgment below is affirmed.

### John Tunaitis—No. 2992.

The indictment, conviction, sentence, proofs, and facts in this case are substantially the same as those in the case of James Ferry, except that in the present case there were sales of whisky made on two different days, and it was shown that the barkeeper, Alexander Gudaitis, who made them, was employed by the defendant, John Tunaitis. The latter was not present when the sales were made. Everything that was said by this court in the foregoing opinion in the case of James Ferry applies to the case of Tunaitis, and, for the reasons therein stated, we are of opinion the court below committed no error, and its judgment is affirmed.

### Alexander Gudaitis—No. 2993.

[2] In this case, Alexander Gudaitis, the barkeeper of John Tunaitis, was tried, convicted, and sentenced for selling liquors contrary to law. The proofs tended to show that on two successive days he had, in answer to orders given by two revenue officers, sold them whisky in what seemed to be the ordinary course of business, as on the first day he had sold the whisky to the revenue agents after the latter had seen him sell whisky to a stranger, who had called for whisky and received it. A sample of the whisky sold to the agents was preserved, labeled, and analyzed. In fact, the case, so far as Gudaitis was concerned, was simply one of fact. He denied having sold the whisky to the revenue agents, said he had never seen them, and claimed the illegal liquor found behind the bar was kept there by him for his own personal use. The jury evidently did not believe his story.

In all three of these cases, Ferry, Tunaitis, and Gudaitis, the record is such that no questions of error are properly before us; but, notwithstanding that fact, we have of our own motion examined the entire proceedings, including the indictments, proofs, and charges of the court, and have found no error therein.

The judgment below is therefore affirmed.

### Ernest Lipke—No. 2990.

This case is practically on all fours with that of John Tunaitis, No. 2992, and in accordance with the views laid down in that case, and in the case of James Ferry, the judgment of the court below is affirmed.

### Joseph Munzo—No. 2991.

In this case the defendant was the barkeeper of Ernest Lipke, No. 2990, and is practically on all fours with that of Alexander Gudaitis,

No. 2993, the barkeeper of John Tunaitis, and in accordance with the views laid down in that case the judgment of the court below is affirmed.

On the strength of what we have said in the cases of James Ferry, John Tunaitis, Alexander Gudaitis, Ernest Lipke, and Joseph Munzo, the judgments of the District Court are hereby affirmed.