[Crim. No. 849.   Third Appellate District.—June 8, 1925.]

## THE PEOPLE, Respondent, v. N. R. MEHRA, Appellant.

[1] CRIMINAL LAW—UNLAWFUL POSSESSION OF INTOXICATING LIQUOR—COMMON NUISANCE—STATUTORY CONSTRUCTION.—Under section 21 of the act of Congress, having for its purpose the carrying into effect of section 1 of the eighteenth amendment to the constitution, prohibiting the manufacture, sale and barter of intoxicating liquors for beverage purposes, and which provides that "Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance," etc., the mere fact that intoxicating liquor is found in one's possession, whether upon the person or in a building, does not, in and of itself, constitute the crime denounced, but there must be something in addition to the mere unlawful possession before a conviction for keeping a common nuisance can be had.

[2] ID.—STATUTORY CONSTRUCTION—MEANING OF "KEPT."—Said section 21 of the enforcement act must be read in the light of section 1 of the eighteenth amendment of the federal constitution, which provides that "After one year from the ratification of this article, the manufacture, sale or transportation of intoxicating liquors within . . . the United States . . . for beverage purposes is prohibited," and when so read the word "kept" used in said section of the enforcement act does not denominate an offense itself, in and of itself, irrespective of the purpose for which the liquor is kept.

[3] ID.—COMMON NUISANCE—UNLAWFUL POSSESSION—PRESUMPTION OF PURPOSE—INFERENCES—EVIDENCE.—To support a judgment of conviction under said section 21 of the enforcement act, in a state such as California where the law raises no presumption of purpose from the mere fact of possession, there must be shown to establish the fact of maintaining a common nuisance, a series of sales or a single sale, accompanied by such attendant circumstances as reasonably raise the inference of the purpose for which the possession of the intoxicating liquor is had, or possession, in connection with surrounding circumstances, such as the large quantity of liquor on hand, the various kinds of liquor, the

---

1. Abatement under Volstead Act, of places where sale of liquors are made illegally, note, 10 A. L. R. 1556.

3. As to conviction of keeping a common nuisance upon proof of a single sale of intoxicating liquors, note, L. R. A. 1917F, 1110. See, also, 15 R. C. L. 406.

containers in which it is kept, the character of the place, the manner in which it is fitted up, the use of passwords in gaining access to the premises, evidence of people visiting the place in unusual numbers or at unusual times, all of which may reasonably raise the inference of a purpose to sell and sufficiently support the charge of maintaining a common nuisance.

[4] ID.—PURPOSE OF KEEPING—INTENT OF STATUTE.—It is not the crime of keeping, but the purpose for which the intoxicating liquor is kept, that is aimed at in the statute prescribing punishment for maintaining a nuisance.

[5] ID.—PRIVATE POSSESSION—COMMON NUISANCE.—Private possession of intoxicating liquor in a private place may constitute the crime of unlawful possession, but that act, in and of itself, does not constitute any other criminal offense under section 21 of the act of Congress usually known as the Volstead Act.

[6] ID.—UNLAWFUL POSSESSION—PRIMA FACIE EVIDENCE OF SALE— MAINTENANCE OF NUISANCE—PRESUMPTION.—Even where the statute provides that the unlawful possession of intoxicating liquor is *prima facie* evidence that such intoxicating liquor is possessed for the purpose of unlawful sale or disposition, the presumption does not arise that the place or establishment where the liquor is kept is conducted as a common nuisance, or is maintained as a place for the unlawful sale of intoxicating liquor.

[7] ID.—MAINTENANCE OF PLACE FOR SALE OF LIQUOR—ERRONEOUS INSTRUCTION.—In a prosecution for maintaining a common nuisance, as denounced by section 21 of the Volstead Act, an instruction which expressly tells the jury that the having in possession at a designated house of intoxicating liquor containing more than one-half per cent of alcohol by volume constitutes the crime of maintaining a common nuisance erroneously excludes from said section of the act the very gist of the offense denounced by the act, to wit, the maintaining of a place of common resort for the sale and distribution of intoxicating liquor—a place where people may go and buy the prohibited article.

[8] ID.—UNLAWFUL POSSESSION—EVIDENCE—ERRONEOUS INSTRUCTION. Where the testimony shows only unlawful possession, whether in or out of a building, conviction can be had only for the offense of unlawful possession, and instructions based thereon and advising that conviction can be had upon such testimony in a prosecution for maintaining a common nuisance are erroneous and do not correctly state the law.

[9] ID.—UNLAWFUL POSSESSION—MAINTENANCE OF NUISANCE—SEPARATE OFFENSES—EVIDENCE—ONCE IN JEOPARDY.—The act or omission constituting the crime known as the unlawful possession of intoxicating liquor is a separate and distinct offense from that of maintaining a nuisance for the sale of such liquor; and the mere fact that testimony showing the unlawful possession of

liquor and a prosecution had upon such a charge is used in part as the testimony to establish the offense of maintaining a common nuisance, which must go further and establish an additional and different offense from that of unlawful possession of the liquor, does not constitute a second prosecution for the same offense. It is simply using the testimony applicable to one offense as a part of the testimony for establishing a distinct and separate offense.

[10] ID.—ONCE IN JEOPARDY—PRIOR CONVICTION OF SEPARATE OFFENSE. In a prosecution for maintaining a common nuisance, as denounced by section 21 of the Volstead Act, a plea of once in jeopardy is not supported by evidence showing that the defendant was prosecuted and convicted in a justice's court on a charge of unlawful possession of intoxicating liquor, which is an entirely distinct offense.

[11] ID. — UNLAWFUL POSSESSION — JURISDICTION — EVIDENCE — JUDGMENT—APPEAL.—Where the record on appeal from a judgment of conviction of maintaining a common nuisance shows that the information charged only unlawful possession of intoxicating liquor, an offense of which the superior court has no jurisdiction, and the record further shows that the defendant was convicted in the justice's court of the identical offense for which the prosecution in the superior court was had upon the same testimony, and that no legal conviction can be had therein, the judgment will be reversed and the defendant discharged as required by section 1262 of the Penal Code. (Opinion on denial of rehearing.)

---

(1) 33 C. J., p. 770, n. 21, 22.   (2) 33 C. J., p. 588, n. 43.   (3) 33 C. J., p. 770, n. 22.   (4) 33 C. J., p. 588, n. 49.   (5) 33 C. J., p. 588, n. 43.   (6) 33 C. J., p. 743, n. 95.   (7) 33 C. J., p. 790, n. 36.   (8) 33 C. J., p. 791, n. 46.   (9) 16 C. J., p. 278, n. 42.   (10) 33 C. J., p. 278, n. 42.   (11) 33 C. J., p. 278, n. 42.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Howe, Hibbitt & Johnston for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted under an information charging him with wilfully and unlawfully maintaining a common nuisance at a certain building or

house numbered 1109 Fifth Street, in the city of Sacramento, state of California. From this judgment the defendant appeals and assigns as grounds for reversal the following, to wit:

1. That the evidence is insufficient to establish the charge of maintaining a common nuisance;

2. That the court erred in its instructions to the jury;

3. That the defendant has been once placed in jeopardy for the same offense.

We will consider the assignments of error in the order in which they are above set forth. The evidence upon which the defendant was convicted consists of the testimony of two arresting officers, and, in so far as it relates to the offense charged, we set forth the testimony in full. Officer Nelson testified: "I saw the defendant on the 28th day of October, 1924, at about 11 o'clock in the morning; it was at 1109 Fifth Street, City of Sacramento. Officer Balsz went with me. Just as you come off the sidewalk at 1109 Fifth Street—I don't know whether it is a club room, or dining room, or kitchen, or what you would call it, but Mehra was in there. I asked him where his room was and he told me it was Room Three, in back, and took me back to his room, which was in the rear of 1109 Fifth Street. He had the key to the padlock that was on the door. We searched the room and found the contents of that jug on the table there back of the dresser in a barley sack. The dresser was standing across the corner of the room. I do not know the defendant's business or occupation. He did run a kind of Hindoo Club, I believe it is." Officer Balsz testified: "I accompanied Officer Nelson on the 28th of October, 1924, to the premises, No. 1109 Fifth Street, Sacramento. We asked the defendant where his room was. He accompanied us to the room. We searched the room and found the jug of jackass brandy. The jug has been identified. We talked to the defendant while there, but discovered later he did not understand us, could not answer in our language. He did not just say that it was his room, he did not say anything but he took us right to this particular room and opened the door with a key, and I took it for granted it was his room. We took the jug to the police station. We placed Mehra under arrest at that time." The remainder of the testimony of these witnesses deals with

the question of former jeopardy, and is not relevant to the first assignment of error.

[1] Section 21 of the act of Congress, having for its purpose the carrying into effect of section 1 of the eighteenth amendment to the constitution, prohibiting the manufacture, sale and barter of intoxicating liquors for beverage purposes, reads as follows: "Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both."

The appellant contends that the testimony in this case, and which we have set forth, did not and does not establish any offense within the language of section 21 above quoted, in that the mere fact that intoxicating liquor is found in one's possession, whether upon the person or in a building, does not, in and of itself, constitute any crime denounced by the above section, or any other provision of the act of Congress prohibiting traffic in intoxicating liquors. To answer this contention requires consideration of both the language of the constitution and of the act of Congress in question. [2] Section 1 of the eighteenth amendment reads: "After one year from the ratification of this article, the manufacture, sale or transportation of intoxicating liquors within . . . the United States . . . for beverage purposes is prohibited." Section 21 of the Enforcement Act must be read in the light of the constitutional provision and the words "manufactured, sold, kept or bartered" interpreted in the light thereof. The words "manufactured, sold and bartered" have a clear and certain meaning and need only to be mentioned to be understood. It is the word "kept" that calls for a legal definition. Should it be read as part of the sentence in which it is found, or does it denominate an offense itself, in and of itself, irrespective of the purpose for which liquor may be kept? In considering this question and determining what is meant by the use of the word "kept," the supreme court of the United States, in the case of *Street* v. *Lincoln*

*Safe Deposit Co.*, 254 U. S. 88, [6 L. Ed. 151, 41 Sup. Ct. Rep. 31, see, also, Rose's U. S. Notes], also reported in 10 A. L. R. 1548, after quoting the portion of section 21, which we have hereinbefore set forth, said: "The word 'kept' in this section is the only one of possible application to the case at bar, and the words with which it is immediately associated are such that, as here used, it plainly means kept for sale or barter, or other commercial purpose." That case decides that there is a distinction between the mere fact of possessing liquors and keeping liquors, contrary to the provisions of said section 21, that is, while the possession, in and of itself, may be unlawful, unless that possession is coupled with the purpose of selling, bartering or other commercial use, the offense of maintaining a common nuisance is not committed. In *Singer* v. *United States*, 288 Fed. 695, the circuit court of appeals of the third circuit, thus deals with the same question: "The words 'sold' and 'kept' in this section are the ones applicable to the case at bar. (Sec. 21, *supra.*) The word 'sold' tells its own meaning. The word 'kept,' read in connection with the words with which it is immediately associated, 'means kept for sale or barter or other commercial purposes,'" citing *Street* v. *Lincoln Safe Deposit Co., supra.* "The test of the statutory nuisance, therefore, is not the number of sales or the length of time liquor is kept upon the premises, but is whether the place is maintained for the keeping and sale of liquor in the sense of the statute. Other essentials being present, a single sale may establish the fact. *Young* v. *United States* (C. C. A. 9th), 272 Fed. 967; *Wiggins* v. *United States* (C. C. A. 2d), 272 Fed. 41; *Gray* v. *United States* (C. C. A. 6th), 276 Fed. 395; *United States* v. *Eilert B. & B. Co.* (D. C.) 278 Fed. 659. And the keeping of liquor for this unlawful purpose for a single day may constitute the offense. *Feigin* v. *United States* (C. C. A.), 279 Fed. 107." In this case, both offers to sell and sales were established by the testimony.

In *Reynolds* v. *United States*, 282 Fed. 256, the circuit court of appeals for the sixth district considered the question with which we are dealing and said: "Maintaining a nuisance, however, as punished by section 21, implies a continuity of action for a substantial period. One might be

guilty of manufacture in a room, and yet not be guilty of maintaining a nuisance therein. It follows that the landlord may be prosecuted under either section, according to the facts of the case." This ruling was again affirmed by the same court in *Hattner* v. *United States,* 293 Fed. 381. It is there said: "The National ·Prohibition Act, tit. 2, par. 21, penalizing as a nuisance the maintaining of premises on which liquor is manufactured and sold, implies a continuity of action for a substantial period."

In the case of *Fassolla* v. *United States,* 285· Fed. 378, the circuit court of appeals for the ninth district, in considering what evidence is necessary to establish the crime of maintaining a nuisance, held as follows: "Evidence that defendant made a sale of liquor for beverage purposes on his premises, and that he had a quantity thereon, held sufficient to sustain a conviction on three counts charging respectively unlawful sale, unlawful possession, and maintaining a 'common~nuisance.' " In this case there was evidence that the officer went to the front door of the premises, gave the password, secured admission, paid three dollars for a half gallon of wine, and on searching the premises, found and seized a quantity of intoxicating liquor, consisting of a number of bottles, several demijohns containing various quantities of wine from one gallon to three or four, and, in answer to the contention that it did not make the defendant's residence his place of business and maintained as a common nuisance, the court further said: "The plaintiff in error relies on the fact that the liquor was manufactured and kept at his dwelling place, and not at a place of business; but by selling it he made it a place of business, and by keeping it there for sale he made his residence a common nuisance, within the provisions of the Prohibition Act, and his possession of the liquor was unlawful."

In *Barker* v. *United States,* 289 Fed. 249, the fourth circuit court of appeals held as follows: "Though a single sale of liquor, or the mere unlawful possession, does not under all circumstances violate National Prohibition Act, tit. 2, sec. 21, making it punishable to maintain a nuisance by keeping a place for the violation of the act, the circumstances surrounding the sale or the single act of possession may be such as to warrant the inference that the

single act was part of a habit, and therefore sufficient to
sustain a conviction for nuisance.'' In that case the evi-
dence showed the possession of two gallons of corn whisky,
a part of which was found in his residence, and a part
under the counter of his store close by, and at his barn
on the same premises were about 100 gallons of mash fit
for distillation into whisky. No sale was proved. The
court was of the opinion that the attendant circumstances
were sufficient to show the purpose for which the liquor
was being kept, and that it was being kept, as well as
manufactured, for commercial purposes, and constituted
maintaining the premises as a common nuisance.

In *Scott* v. *State,* 37 N. D. 90 [L. R. A. 1917F, 1107,
163 N. W. 813], the supreme court of North Dakota held
that a single sale would warrant a conviction on an in-
formation for keeping and maintaining a common nuisance
by keeping a place where intoxicating liquors are sold as
a beverage in violation of the prohibition law of this state.
The act under which the defendant was prosecuted defined
common nuisance as 1. A place where intoxicating liquors
are sold, bartered or given away, in violation of law;
2. Where persons are permitted to resort for the pur-
pose of drinking intoxicating liquors as a beverage; and
3. Where intoxicating liquors are kept for sale, barter, or
delivered in violation of law. It was held that evidence
of one sale was sufficient to show the keeping of a place
for the unlawful sale of intoxicating liquor, although the
evidence did, in fact, establish more than one single act,
and also established the drinking of liquor on the prem-
ises.

In *Barngrover* v. *State* (Okl. Cr.), 229 Pac. 301, Court
of Criminal Appeals of Oklahoma had before it the iden-
tical question presented to us in this case. The Oklahoma
statute, among other things, specified that all places where
any such liquor is kept, or possessed by any person, in
violation of any of the provisions of this act, constituted a
public nuisance. In construing this statute and the word
''kept,'' it was held that to sustain a conviction on such a
charge, there must be proof tending to show that the place
was a place of public resort, where intoxicating liquors were
consumed, or from which distribution was made. In that
case, there was no testimony of sale other than that a cer-

tain person who apparently came from the place kept by the defendant, had in his possession a bottle of whisky. A search of the place disclosed a small quantity of whisky and also in the upper stories of the building a quantity of hay which, by the odor emitted, indicated that whisky had been poured thereon. There was some testimony also as to the reputation of the place, indicating that intoxicating liquors were kept there for sale. Under this state of the evidence the court held that even though the jury found that there was or had been whisky in the house, it did not necessarily follow that the defendant had it there for the purpose of sale, or for any illegal purpose, constituting a necessary element of maintaining a public nuisance. In other words, there must be something in addition to the mere unlawful possession of intoxicating liquor before a conviction for keeping a common nuisance could be had.

In an extended note appended to the case of *Scott* v. *State, supra,* as reported in L. R. A. 1917F, beginning with page 1110, are collated a large number of cases dealing with the proof necessary to support a conviction of keeping a common liquor nuisance. An examination of these cases reveals the fact that not a single case holds that the mere showing of illegal possession is sufficient to establish such charge. A number of the cases do hold that a single sale, taken in connection with the attendant circumstances indicating a purpose and intent to conduct the business of unlawfully selling intoxicating liquors, will support such a conviction, while a large number of the cases hold that a single sale is insufficient, and that there must be a series of sales. [3] The better reasoning, we think, supports the holding that in addition to possession, where the law raises, as in California, no presumption of purpose, from the mere fact of possession, there must be shown to establish the fact of maintaining a common nuisance, a series of sales or a single sale, accompanied by such attendant circumstances as reasonably raise the inference of the purpose for which the possession of the intoxicating liquor is had, or possession, in connection with surrounding circumstances, such as the large quantity of liquor on hand, the various kinds of liquor, the containers in which it is kept, the character of the place, the manner in which it is fitted up, the use of passwords in gaining access to the

premises, evidence of people visiting the place in unusual numbers or at unusual times, all of which may reasonably raise the inference of a purpose to sell and sufficiently support the charge of maintaining a common nuisance. But we have found no case which upholds a conviction upon a lesser degree of evidence. Any other holding would lead to the conclusion that wherever a bottle of liquor may be unlawfully in anyone's home, a conviction for maintaining a common nuisance may be had. [4] It is not the crime of keeping, but the purpose for which the intoxicating liquor is unlawfully kept that is aimed at in the statute prescribing punishment for maintaining a nuisance. In the case at bar there is no testimony whatever of maintaining room No. 3 at No. 1109 Fifth Street, in the city of Sacramento, for any purpose. The testimony simply shows the finding of a jug of whisky or jackass brandy in the bedroom unlocked by the defendant. If it were there for his own use, even though unlawfully obtained, it is evident that nothing within the language of a common nuisance was being maintained. [5] Private possession in a private place may constitute the crime of unlawful possession, but that act, in and of itself, does not constitute any other criminal offense, under section 21 of the act of Congress, usually known as the Volstead Law. In *People* v. *Frankovich,* 64 Cal. App. 184 [221 Pac. 671], this court had before it the prosecution for maintaining a nuisance under section 21 of the Volstead Act, and we refer to the facts set forth in the opinion in that case, as a good illustration of what constitutes maintaining a public nuisance. [6] Even where the statute provides that the unlawful possession of intoxicating liquor is *prima facie* evidence that such intoxicating liquor is possessed for the purpose of unlawful sale or disposition, the presumption does not arise that the place or establishment where the liquor is kept, is conducted as a common nuisance, or is maintained as a place for the unlawful sale of intoxicating liquor. In *State* v. *Lesh,* 132 Wash. 309 [232 Pac. 302], the supreme court of Washington, under such a statute held that the possession of liquor creating presumption of intent to unlawfully sell or dispose of it, does not create presumption of intention to sell it at a place maintained for sale of liquors, and refusal to so instruct was error. This case bears upon all three assign-

ments of error herein. The trial court was asked to give the following instruction: ''While the unlawful possession of intoxicating liquor is *prima facie* evidence that such intoxicating liquor was possessed for the purpose of unlawful sale or disposition, the mere fact of the unlawful possession of intoxicating liquor in any place or establishment does not raise any presumption of law that such place or establishment was opened up, conducted, or maintained for the unlawful sale of intoxicating liquor.'' . . . The refusal to give this instruction was held error. The supreme court further said: ''We think appellant was entitled to have this request or the substance of it given. Its meaning is that, while there flows from the mere possession of intoxicating liquor a presumption of intention to unlawfully sell or dispose of it, there is no presumption flowing from mere possession that there is an intent to sell or dispose of the liquors at a place opened up, conducted, or maintained for that purpose. While we do not hold that the request was wrong, we are of the view that it would have been better and more complete had it contained the idea that the proof of possession might be considered by the jury, together with other facts, in determining whether appellant was a jointist. (Maintaining a nuisance.) The instruction given, unless qualified as suggested, might easily mislead the jury into the belief that an inference of guilt as a jointist would arise from the mere fact of possession.'' This latter sentence refers to the instructions which were given by the court to the effect that possession was *prima facie* evidence that the liquor was kept for purposes of unlawful sale, etc.

Upon the first assignment of error, we hold that the evidence in this case is not sufficient to support a conviction of maintaining a common nuisance. As the case must go back for a new trial, it is necessary to pass upon both the second and third assignments of error. At the request of the People, the court gave two instructions, which we have numbered seven and eight, as follows:

### Instruction No. 7.

''The provisions of the National Prohibition Act of October 28, 1919, commonly called the Volstead Act, forbids the possession of intoxicating liquor containing one half of one per cent or more of alcohol by volume for bever-

age purposes, and if you believe from the evidence in this case to a moral certainty and beyond all reasonable doubt that the defendant did, at the time and place charged in the information, to-wit, at number 1109–5th Street, maintain the house at said number, and did then and there knowingly have in his possession intoxicating liquor for beverage purposes and that said liquor then and there contained more than one half of one per cent of alcohol by volume, then I instruct you that the house in which said intoxicating liquor was kept and possessed is, under the law, a common nuisance, and the person maintaining such common nuisance is guilty of a misdemeanor.''

Instruction No. 8.

''Upon the plea of once in jeopardy and former conviction, the Court instructs the jury that evidence sufficient to convict for unlawful possession of intoxicating liquor under the Volstead Act would not alone support a conviction for maintaining a nuisance. A person may be unlawfully in possession of intoxicating liquor without being guilty of maintaining a nuisance.

''In order to convict the defendant for maintaining a common nuisance under Section 21 of the Volstead Act there must be evidence of the keeping or possession of the house where the liquor was unlawfully kept, which element is not necessary to the proof of the crime of unlawfully possessing intoxicating liquors.

''The court further instructs you that the conviction of defendant in the Police Court of the City of Sacramento on November 6th, 1924, of the crime of unlawful possession of intoxicating liquors, as charged in the complaint in the Police Court, as a matter of law, does not bar a prosecution of defendant for maintaining a nuisance at 1109–5th Street, as charged in the information on file in this case, and upon defendant's plea of once in jeopardy and former conviction, it is your duty to return a verdict for the People.''

[7] By instruction No. 7 the jury is expressly told that the having in possession at house No. 1109 Fifth Street, of intoxicating liquor containing more than one-half per cent of alcohol by volume constituted the crime of maintaining a common nuisance. This interpretation excludes from section 21 of the Volstead Act the very gist

of the offense denounced by the act of Congress, to wit, the maintaining of a place of common resort for the sale and distribution of intoxicating liquor—a place where people may go and buy the prohibited article.

[8]   By the eighth instruction the jury is advised that the offense of unlawful possession is transformed into a different crime if that unlawful possession is inside instead of outside of a building.  The statute makes no such distinction.  Unlawful possession, as unlawful possession, is simply unlawful possession whether the forbidden article is upon the person or within a building.  The mere fact that the defendant takes a flask of whisky, or a bottle of jackass brandy into his residence does not, in and of itself, constitute his home a common nuisance.  Such an interpretation of section 21 of the Volstead Act would make the offense of unlawful possession and maintaining a common nuisance one and the same, and, therefore, amenable to the plea of once in jeopardy, where conviction has first been had on account of the unlawful possession.  Neither one of the instructions complies with the cases which we have cited holding that the liquor must be kept for sale or barter, or, as said in most of them, for a commercial purpose.  Where the testimony shows only unlawful possession, whether in or out of a building, conviction can be had only for the offense of unlawful possession, and instructions based thereon and advising that conviction can be had upon such testimony in a prosecution for maintaining a common nuisance are erroneous and do not correctly state the law.

Both instructions permit of conviction upon testimony showing simply unlawful possession.  In the case of *Key* v. *State* (Okl. Cr.), 234 Pac. 791, where the defendant was charged with wilfully and unlawfully having in his possession certain intoxicating liquors with intent to sell, barter, etc., the trial court instructed the jury as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant, Gus Key, did in Carter County, Okl., on or about the 31st day of January, 1922, have possession of Jamaica ginger, you will find the defendant guilty," etc.  In passing upon this charge, the supreme court ruled as follows.  "The instructions given by the court are fundamentally deficient.  Possession alone

of intoxicating liquor is not a crime against the laws of this state, much less the possession alone of a medicated alcoholic compound in a drug store; there must be coupled with such possession an unlawful intent to convey, sell, or otherwise furnish the same in violation of the prohibition ordinance and laws of the state. While the statute makes the possession of more than one quart of spirituous liquor in one's place of business '*prima facie* evidence of an intent to violate the law,' this phase of the case was not submitted to the jury, as the trial court refused to give the defendant's requested instruction based on his theory of defense in rebuttal of any such presumption, if any, arising from the quantity of the compound possessed. The court not only failed to instruct the jury on this theory of defense, but the instructions given make evidence of possession conclusive proof of guilt."

While the statute under which this case was being prosecuted differs in its wording from section 21 of the Volstead Act, its meaning, as interpreted by the supreme court of the United States, is the same as is held by the Oklahoma court, that the word "kept" means kept for sale, which makes the ruling of the Oklahoma supreme court directly applicable; in that mere unlawful possession alone is not sufficient to sustain or support the charge given to the jury in that case, and, likewise, the holding must be that the charge given to the jury in this case that proof of possession in a house is sufficient to establish the offense of maintaining a common nuisance, is not a correct statement of the law. There must be proof, and a correct statement of the law requires the proving and finding that the liquor kept is kept for the purpose of barter or sale, and an instruction which permits of a conviction without including this element in a nuisance charge is not a correct statement of the law.

[9] Is the plea of once in jeopardy well founded? To support this plea the defendant introduced in evidence a record of his conviction of the unlawful possession of the intoxicating liquor mentioned in the testimony, which we have hereinbefore set forth, and a large number of authorities have been cited to support appellant's contention, Appellant's argument rests upon section 654 of the Penal Code, which reads: "An act or omission which is made

punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. In the cases specified in sections six hundred and forty-eight, six hundred and sixty-seven, and six hundred and sixty-eight, the punishments therein prescribed must be substituted for those prescribed for a first offense, if the previous conviction is charged in the indictment and found by the jury."

We have no controversy and take no exception to the rulings had in the different cases cited by appellant, but we think the whole argument is founded upon a misapprehension of the plain wording of this section. As we have seen, the first clause of that section, "an act or omission which is made punishable in different ways, by different provisions of this code" may be punished under either of such provisions, but in no case can it be punished under more than one. The error of appellant lies in the failure to apprehend the fact that the act or omission constituting the crime known as the unlawful possession of intoxicating liquor is a separate and distinct offense from that of maintaining a nuisance for the sale of such liquor. The act or omission is not made punishable in different ways. The Volstead Act names different acts constituting different offenses and punishes each act separately. There is not a word in the Volstead Act, as we read it, which makes an act punishable in different ways. They are all different acts, different offenses, and different punishments. In *People* v. *Arnarez*, 68 Cal. App. 645 [230 Pac. 193], in a case where the defendant was charged with unlawfully manufacturing liquor, and the jury returned a verdict of unlawful possession, this court held:

"A reference to the Volstead Act, the penal provisions of which were incorporated into the law of this state, shows that the offense of unlawful possession of intoxicating liquors and the manufacture of intoxicating liquors or sale for beverage purposes are separate and distinct offenses, even though they are so connected that, under the procedure admissible to be followed and ordinarily followed in the federal courts, said offenses are set forth in distinct

and separate counts, and the jury authorized to find the defendant guilty upon the particular count or counts sustained by the evidence. See *Fassolla* v. *United States* (C. C. A.), 285 Fed. 378, in which the defendant was prosecuted under a count charging unlawful sales, and under a count charging unlawful possession. . . . The offense of unlawful possession and the crime of unlawful manufacture are separately and distinctly defined in the Volstead Act, and separate and distinct penalties for the separate offenses fixed and particularly set forth. We see no difference in the application of the principle concerning distinct offenses in this case from that which was applied by the federal court in the cases of *Bell* v. *United States* (C. C. A.), 285 Fed. 145, *Massey* v. *United States* (C. C. A.), 281 Fed. 293; *Singer* v. *United States* (C. C. A.), 288 Fed. 695, and *Page* v. *United States* (C. C. A.), 278 Fed. 41, where it was held as set forth in 33 C. J. 617, that:

" '*The offense of unlawfully possessing liquor is a distinct offense from that of the unlawful transportation of liquor, and the offense of unlawfully possessing liquor is a distinct offense from that of maintaining a nuisance for the unlawful sale of liquor.*' "

In *Panzich* v. *United States*, 285 Fed. 871, the ninth circuit court of appeals held: "Acquittal on a charge of selling liquor is not inconsistent with conviction for maintaining a common nuisance by keeping a place where liquor was unlawfully kept for sale."

In *State* v. *Wold*, 96 Me. 401 [52 Atl. 909], the supreme court of Maine ruled that: "Having liquors in possession with intent to sell in violation· of law and maintaining a common nuisance are distinct offenses, and an acquittal of the former is no bar to a conviction on the latter, even upon the same facts," citing *Commonwealth* v. *McCauley,* 105 Mass. 69; *Morey* v. *Commonwealth,* 108 Mass. 433; *Commonwealth* v. *Sullivan,* 150 Mass. 315 [23 N. E. 47].

In *Singer* v. *United States*, 288 Fed. 695, *supra,* summing up the cases on the question of · alleged double prosecutions, the court used the following language: "They have held specifically that the offense of unlawfully possessing liquor is a distinct offense from that of the unlawful transportation of liquor, and that the offense of unlawfully pos-

73 Cal. App.—12

sessing liquor is a distinct offense from that of maintaining a nuisance for the unlawful sale of liquor. For these several offenses, separate convictions may be had and separate sentences imposed," citing the cases which we are considering herein.

The mere fact that testimony showing the unlawful possession of liquor and a prosecution had upon such a charge is used in part as the testimony to establish the offense of maintaining a common nuisance, which must go further and establish an additional, and as said by the foregoing authorities, a different offense from that of unlawful possession of the liquor, does not constitute a second prosecution for the same offense. It is simply using the testimony applicable to one offense as a part of the testimony for establishing a distinct and separate offense. That these offenses are separate, see *Ferry* v. *United States,* 292 Fed. 583; *Beyer* v. *United States,* 282 Fed. 225. In *Ex parte Moore,* 70 Cal. App. 483 [233 Pac. 805], the district court of appeal of the second district of this state, considering the question of the Volstead Act defining separate and distinct offenses, approved the rule which we are considering in the following language: "However, we do not find it necessary in this case to determine whether the evidence is sufficient to show probable cause for believing petitioner guilty of selling the liquor, for it unquestionably suffices to show probable cause for believing him guilty of possessing it unlawfully. 'Possession,' says the court in *Beyer* v. *United States* (C. C. A.), 282 Fed. 226, 'is a crime separate and distinct from the crime of the sale of liquor.' In title 2, par. 3 (section 10138½aa) of the National Prohibition Law, it is expressly declared that 'no person shall . . . possess any intoxicating liquor except as authorized in this act.' Possession, therefore, except as authorized by the Volstead Act, is one of the acts which the Wright Act, by its adoption of the 'penal provisions' of the federal statute, denounces as a criminal offense."

In *People* v. *Townsend,* 214 Mich. 267 [16 A. L. R. 902, 183 N. W. 177], the supreme court of Michigan, in dealing with the plea of once in jeopardy, sets forth the following test: "The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act

may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either does not exempt the defendant from prosecution and punishment under the other.''

In the case at bar, as we have seen, a prosecution and conviction of the unlawful possession of intoxicating liquor simply does not and would not support a conviction for maintaining a common nuisance for the sale or barter of such liquor. Some additional facts must be made to appear before a conviction on a nuisance charge can be had. This case is identical with the test here imposed. The additional fact to be proven, i. e., the keeping for sale, etc., is necessary. That the testimony, sufficient in a former case, is used in part to prove the case upon the prosecution of the nuisance charge, which must go further and establish what in some states has been held to be a continuous and persistent intent to violate the law by maintaining a place for the unlawful sale of liquor, does not, in any sense, subject the defendant to a double prosecution for one offense.'' The offense and the acts are separate. In *State* v. *Marchindo*, 65 Mont. 431 [211 Pac. 1093], the supreme court of Montana, passing upon a similar question, held that the offenses are separate and distinct and a prosecution for one does not bar a prosecution for what is denoted as a separate and distinct offense. After reviewing a long list of authorities that court thus expresses its view:

''Our opinion is that the authorities cited herein sustain the principle that the true test to be applied in cases of this nature is whether the same evidence would sustain a conviction under each count, or does each count require proof of an additional fact which the others do not. Or, to state it in another way: Would the evidence required to support a conviction upon one of the counts have been sufficient to warrant a conviction upon the others? Applying this test, it is apparent that in the information in this case the same evidence would not sustain a conviction under each count; that each count required proof of an additional fact which the others did not.

''It is apparent that evidence sufficient to convict for unlawfully selling intoxicating liquor would not alone support a conviction for either the unlawful possession of such

liquor or for maintaining a nuisance. A person may be unlawfully in possession of intoxicating liquor without making any sale thereof or being guilty of maintaining a nuisance, and be convicted of such unlawful possession. In order to convict for maintaining a common nuisance under section 19 of the Act, there must be proof of the keeping or possession of the place where the liquor is either unlawfully kept or sold, which element is not necessary to the proof of either the crime of unlawfully selling or unlawfully possessing intoxicating liquor.'' In the case at bar the gravamen of the charge is the keeping of a place for the unlawful sale of liquor, as heretofore defined, and the mere unlawful possession of such liquor is not sufficient to sustain the nuisance charge.

In *People* v. *Brannon,* 70 Cal. App. 225 [233 Pac. 88], the district court of appeal for the second district of this state, in a very carefully prepared opinion, clearly draws the distinctions between acts punishable differently and different offenses to prove which the testimony introduced may, in part, show the same acts. We quote therefrom the following:

''The prohibition of the constitution is against putting a person twice in jeopardy for the 'same offense.' Article 1, par. 13. See, also, Pen. Code, sec. 1017, subd. 3. It is the identity of the offense, and not of the act, which is referred to in the constitutional guaranty against putting a person twice in jeopardy. The Supreme Court of Ohio, in an opinion of exceptional vigor and rugged forcefulness, repudiates the tendency of some courts to construe the words 'same offense' as meaning the same act or transaction. 'The constitutional provision,' says that court in *State* v. *Rose,* 89 Ohio St. 383 [106 N. E. 50], L. R. A. 1915A, 256, 'uses the word ''offense.'' Layman and lawyer alike understand the word ''offense'' to here mean simply a crime. . . . The words ''same offense'' mean same offense, not the same transaction, not the same acts, not the same circumstances or same situation. . . . It is not enough that some single element of the offense charged may have a single element of some other offense as to which the defendant had theretofore been in jeopardy, but the constitutional provision requires that it shall be the ''same offense.'' . . . Numerous decisions can be cited to sustain

the contention of the defendant as to his former jeopardy. Some of these decisions may be accounted for by a difference in the constitutional provisions but more of them are accounted for by the fact that the courts have usurped the power of the lawmaker and the constitution maker and have added something to or subtracted something from the plain provisions of the laws and constitution. . . . Courts too frequently fall into the very common error of assuming to interpret everything in the line of legal language. The utter folly and wholesale abuse of construing words that need no construction and of interpreting language that needs no interpretation has led to much of the judicial confusion and most of the irreconcilable diversity of court decisions. There can be no stabilty about law until there be certainty about law, and when the constitution maker or statute maker uses a plain phrase, a simple sentence and a workaday word, with a clear, simple and unmistakable meaning, it is almost criminal in a court to scramble what is simple and confuse what is clear, under the mask of its right to construct.' ''

[10] From what has been said, there is no escape from the conclusion that there is no merit in the plea of former jeopardy in this case. The law carefully and distinctly defines the offenses of unlawful possession of intoxicating liquor, unlawful sale of intoxicating liquor, unlawful manufacture of intoxicating liquor and the maintenance of a common nuisance. These offenses are all separate and distinct. They are distinct offenses, not simply different punishments affixed to the same act. They are separately defined, set forth and made punishable by the Volstead Act, and the mere fact that the evidence or testimony used in one case to prove the crime there charged, may be used, in part, to prove a different offense upon a different charge, does not support the plea of former jeopardy. The act of Congress having made the offenses with which we are dealing, separate, and the state of California, through what is known as the Wright Act (Stats 1921, p. 79), having incorporated the same into the penal laws of this state, officers and courts are under the legal necessity of following the law just as it is written. We think it clearly appears that Congress, in defining and making penal the distinct offense of maintaining a common nuisance, was

evidently framing a law so as to curb the activities of persistent offenders, and not to punish twice for the same offense.

For the reasons set forth under the first and second assignments of error herein, the judgment of the trial court is reversed and the cause remanded for further proceedings.

Anderson, J., *pro tem.*, and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 8, 1925, and the following opinion then rendered thereon:

THE COURT.—Petition for rehearing by the plaintiff; petition by the defendant for modification of the order heretofore made and entered in this action. [11] From the fact that the information in this cause charged only unlawful possession, an offense of which the superior court has no jurisdiction, and the record shows that the defendant has already been convicted in the justice's court of the identical offense for which this prosecution is had upon the same testimony, and that no legal conviction can be had herein; it follows that the portion of the order remanding said cause to the trial court for further proceedings should be vacated and no new trial directed.

The order heretofore entered is, therefore, amended to read: Judgment reversed and defendant discharged as required by section 1262 of the Penal Code. Petition for rehearing denied.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 6, 1925.

All the Justices present concurred.