[Crim. No. 3239.   First Dist., Div. Two.   Jan. 30, 1957.]

THE PEOPLE, Respondent, v. QUINCY CANNON, Appellant.

Alfred J. Hennessy for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Walter Giubbini, Deputy District Attorney, for Respondent.

THE COURT.—Appellant, together with his codefendant, Frank G. Winborn, was found guilty by a jury of violation of section 11557 of the Health and Safety Code (maintenance of place for disposal of narcotics) after having admitted two prior convictions of which one was of possession of narcotics (§ 11500 of said code). Under section 11712 of said code he was sentenced to San Quentin. He appeals from the judgment of conviction, arguing that the evidence is insufficient to support it, considering also that part of the evidence was allegedly inadmissible because obtained as the result of an allegedly illegal entry and search without a warrant. We have found the appeal without merit.

As a foundation for the admittance of evidence obtained by the entry and search on August 10, 1955, of the apartment rented by appellant, Inspector Chasten of the State Bureau of Narcotic Enforcement testified outside the presence of the jury in substance as follows: He had information that the two defendants had rented an apartment at 1411A Golden Gate Avenue under an assumed name and maintained it for the selling of narcotics, and that addicts were entering the place day and night mainly through the back door. He knew of appellant's prior narcotics conviction and had before arrested him in relation to a narcotics violation. He knew of defendant Winborn's conviction as an addict and had observed symptoms of addiction on him. Beginning August 5, 1955, he placed the premises under observation at different times. He saw Winborn and also other known addicts enter the apartment through the back door and saw appellant enter the front entrance from which the apartment is reached. However, he intended to make at least two purchases of narcotics before making an arrest. On the morning of August 10, 1955, he had a confidential operator of the State Bureau make two purchases of one bindle each. The operator informed him that when he visited the apartment for that purpose both defendants were there. With respect to these purchases the witness

had before testified, in the presence of the jury, that the operator had been searched and all objects except a five-dollar bill of which the number was recorded had been removed from him. Thereafter, the witness and another inspector accompanied the operator to the vicinity of the apartment, rented by appellant, saw him climb the back stairs to the apartment and enter its rear doorway at approximately 9:30 a. m. After a few minutes he returned and gave the inspector a small paper-wrapped package, a bindle. When he was searched again the money he had been given was not on him. The whole procedure was repeated an hour later, resulting again in the delivery of a bindle and the absence of the five-dollar bill. Thereafter about noon the arrests and search were made without a warrant, the inspectors not forcing the entry into the apartment but waiting before its front entrance and entering only when somebody opened the door to go out.

■ ''A search of a person and the place where he is arrested as an incident to a lawful arrest may be justified only if he was committing or attempting to commit an offense in the officer's presence, or the officer had reasonable cause to believe he had committed a felony, or the arrest is made pursuant to a warrant. (*People* v. *Simon*, 45 Cal.2d 645, 648 [290 P.2d 531].) ■ Reasonable cause is such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty of a crime. (*People* v. *Kilvington*, 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73].) ■ Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt. (*People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535].) ■ Information provided by an anonymous informer is relevant on the issue of reasonable cause, but in the absence of some pressing emergency an arrest may not be based solely on such information. (*Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36].) ■ Such information, together with the personal observations of the police, may justify their reliance on the information they had received. (*Id.*) ■ If, before the search and seizure, the officers were justified in making an arrest, it is immaterial that the search and seizure preceded rather than followed the arrest. (*People* v. *Simon*, 45 Cal. 2d 645, 648-649 [290 P.2d 531].)'' (*People* v. *Moore*, 141 Cal.App.2d 87, 89-90 [296 P.2d 91].) ■ The known circumstances stated constituted reasonable cause to believe that

appellant had committed or was committing one or more of the narcotics violations made punishable by imprisonment in the county jail or state prison under sections 11712 and 11713 of the Health and Safety Code, which offenses for the purpose of legality of the arrest are considered felonies. (*Cf. People v. Graff,* 144 Cal.App.2d 199, 205-206 [300 P.2d 837].) The facts known to the inspector, together with the information received and the observation personally made constituted a sufficiently strong indication that appellant was maintaining the apartment he had rented for the purpose of unlawfully selling or giving away narcotics. (§ 11557, *supra.*)

The further evidence received at the trial, including that which was obtained by the search we have found not to have been unlawful, was to the following effect: The bindles obtained from the operator were proved to contain one grain of heroin each. The person who opened the door before which the inspector waited was a known addict named Webber. Upon seeing the inspectors he placed a small, white object in his mouth. When ordered to "spit it out" he spit it to the floor. (There was no evidence that he was forced to do so at pistol point as claimed by appellant.) The bindle was proved to contain one and one-half grains of heroin. The defendants were both in the apartment, and on defendant Winborn was found among other currency the two five-dollar bills which had been given to the operator. There were, moreover, two other known addicts in the apartment and during the presence of the officers in the apartment three more known addicts entered by the back door. No other narcotics than the bindle spit out by Webber were found. The manager of the apartment house testified that appellant rented the apartment using the name of George Reid. A couple of times defendant Frank Winborn paid the rent, saying that George sent the rent by him. The defendants did not testify in their own behalf or introduce any evidence.

Appellant's contentions that the evidence was insufficient to support the judgments because no narcotics were found in the apartment except those on Webber for which appellant was not responsible, because the money given for the purchase of narcotics was not found on him and because the operator could have hidden the bindles he gave to the inspectors on his person because of imperfections in their search of him or have obtained the bindles elsewhere after passing through defendants' apartment, are wholly devoid of merit. Appellant

was not convicted of possession or sale of narcotics. The only question before us is whether there was substantial evidence that appellant maintained the apartment for the purpose of unlawfully selling or giving away narcotics. (*People* v. *Caritativo*, 46 Cal.2d 68, 72 [292 P.2d 513] ; *People* v. *Dragoo*, 121 Cal.App.2d 322, 324 [263 P.2d 90].) The renting of the apartment by appellant under a false name, the paying of rent and the occupation by both defendants, who both had records of prior conviction of narcotics violations, the numerous known addicts who frequented the place, of whom one tried to secrete a bindle of heroin there, and especially the presence in the apartment on one of the defendants of the money given to the operator for the purchase of narcotics, without any evidence being offered by the defendants to explain this most suspicious fact, together certainly constituted substantial evidence that the defendants together maintained the apartment in violation of section 11557 of the Health and Safety Code as alleged in the information.

Judgment affirmed.