[Crim. No. 3341. First Dist., Div. One. Feb. 10, 1958.]

THE PEOPLE, Respondent, v. ALAN KENT GORG, Appellant.

Charles R. Garry, Julius M. Keller and Garry, Dreyfus, McTernan & Keller for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse and Victor Griffith, Deputy Attorneys General, J. F. Coakley, District Attorney (Alameda), and Francis W. Vokata, Deputy District Attorney, for Respondent.

PETERS, P. J.—Defendant Alan Kent Gorg and one Norman Fontaine were jointly charged with the illegal possession of narcotics. Gorg admitted a prior narcotic felony conviction. The two were separately tried, and both were found guilty. Gorg appeals from the judgment of conviction and from the denial of his motion for a new trial. His contentions are that his arrest without a warrant was illegal, that such illegality tainted the subsequent search of his premises even though such search was based on a warrant, and that, in any event, the search warrant was a "blanket" or "general" warrant and, as such, invalid.

The facts as disclosed by the record are as follows: Gorg, Fontaine and one Hyde, for some months prior to June 1, 1956, when the arrest and search were made, lived in the lower flat of a two-story building located in Berkeley. The flat consisted of three bedrooms, a bathroom, a kitchen and a living room. The owner testified that each tenant paid his rent separately to her in differing amounts. Each tenant had his own bedroom, which was never locked, and the three occupants shared the utility expenses, and the other rooms of the apartment. Each of the three bedrooms opened into one of the areas occupied in common by the three tenants.

On March 21, 1956, Inspector Braumoeller of the Bureau of Narcotic Enforcement received a phone call from a reliable informant who told the inspector that he believed that Gorg and Fontaine were trafficking in marijuana at the address in question; that he had obtained a marijuana cigarette in the bathroom of the establishment; that there was considerable traffic to and from the apartment; that he believed marijuana was being sold from the premises and that marijuana parties were being held there. The informant did not say that he saw Gorg place the marijuana cigarette in the bath-

room, or that he had seen Gorg sell or make any marijuana cigarettes. The inspector was familiar with the fact that Gorg had a prior felony conviction for a narcotic offense. (*People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469].) He transmitted that knowledge and the information received from the informer to the Berkeley Police Department. That department placed the premises under surveillance for a period of about three months. Officer Reppas testified that during this period he observed several known narcotic offenders visit the premises, but he never saw these persons in the presence of appellant. Inspector McBee, at the preliminary examination, testified that in talking with several informers he heard appellant's name mentioned as being involved in the narcotic traffic, heard that appellant was associated with narcotics at his residence, and heard that narcotics could be obtained there from either Fontaine or appellant. He refused to identify these informers. He also stated that a Youth Authority officer informed him that a person on parole had purchased narcotics from Fontaine at the residence. The person on parole and the Youth Authority officer were both identified.

On the evening of May 31, 1956, Inspector McBee supplied an informer with funds, observed him enter the premises in question, and when he came out he delivered to the inspector six marijuana cigarettes. Appellant testified that he was in Los Angeles from May 26th to 11 p. m. on May 31, 1956, attending the funeral of his father.

On June 1, 1956, the police obtained a search warrant which named Fontaine and which authorized a search of the lower flat in question "including all rooms and buildings used in connection with the premises and adjoining same, and in any receptacle or safe therein." At about 9 p. m. a number of people were observed leaving the premises. Shortly thereafter appellant was observed backing his automobile out of the premises. Fontaine and another person were with him. Officer Reppas placed appellant under arrest. Appellant then reached in his shirt pocket for a cigarette that looked like and was wrapped in the same manner as a marijuana cigarette. A scuffle ensued, during which appellant swallowed the cigarette. The arresting officer, in the presence of appellant, told another officer that appellant had swallowed a marijuana cigarette, and appellant remained silent. A search of the automobile disclosed the remains of a marijuana cigarette on the floor. Then the police asked Fontaine to unlock the premises, which he did, and then the police served the search

warrant on Fontaine. A search of the premises was quite rewarding. A cellophane bag of marijuana seeds and two marijuana cigarette butts were found in an ash tray in the living room. In Fontaine's bedroom two bottles of marijuana were found, as well as several marijuana cigarette butts. In appellant's bedroom, under a bookcase, a cardboard box containing marijuana was found. Fontaine testified that all of this marijuana belonged to him. A search of appellant's clothing disclosed traces of marijuana in the debris from the pockets.

Appellant first contends that his arrest was illegal, and that such illegality tainted the subsequent search of the automobile and the premises, even if the search of the premises was based on a valid search warrant. Based on this premise it is urged that all of the evidence against him, that is the exhibits found in his automobile and on his person, or in his apartment, the evidence of the scuffle and his swallowing a cigarette, and the evidence of his silence in the face of an accusation was inadmissible.

Whether the arrest was a legal one, since it was accomplished without a warrant of arrest, depends upon whether or not the police had reasonable cause to believe that appellant was committing or had committed a felony. (*People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531] ; *People* v. *Cannon,* 148 Cal.App. 2d 163 [306 P.2d 589].) Reasonable or probable cause is such a state of facts as would lead a man of ordinary caution and prudence to believe, and conscientiously to entertain a strong suspicion that the person accused is guilty. (*People* v. *Soto,* 144 Cal.App.2d 294 [301 P.2d 45].) Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535] ; *People* v. *Cannon,* 148 Cal.App.2d 163 [306 P.2d 589].) Just as a search without a warrant cannot be justified by what it turns up (*People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13] ; *People* v. *Goodo,* 147 Cal.App.2d 7 [304 P.2d 776] ), an arrest without a warrant cannot be justified by what is subsequently discovered. (*People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528].)

How do these rules apply to the present case? The important considerations are whether the officer, before the search, has reasonable cause to make the arrest, and whether the subsequent search is reasonably justified as an incident of that arrest. (*People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531].)

In the instant case the officers had ample evidence upon which to base the search of the premises even without a warrant, and the same evidence constituted ample information upon which to arrest the appellant. They had the information received from the various informers which was, of course, admissible on the issue of reasonable cause. They knew of appellant's past record. They saw known narcotic addicts going in and out of the premises. An identified person on parole had given them pertinent information. When they were about to serve the search warrant they saw appellant and Fontaine trying to leave the premises. The facts known to them constituted reasonable grounds to warrant the arrest and search. (See *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Cannon,* 148 Cal.App.2d 163 [306 P.2d 589]; *People* v. *Hood,* 150 Cal.App.2d 197 [309 P.2d 856]; *People* v. *Garnett,* 148 Cal.App.2d 280 [306 P.2d 571]; *People* v. *Sayles,* 140 Cal.App.2d 657 [295 P.2d 579]; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6].)

Appellant contends that the relay of information from the informer to Braumoeller to the Berkeley police who arrested him constitutes hearsay upon hearsay, and was inadmissible. This point is without merit. *People* v. *Hood,* 150 Cal.App.2d 197 [309 P.2d 856], is precisely in point. There an informant gave information to a parole officer who relayed it to her superior officer who relayed it to the narcotic detail of the police department and so on to the arresting officer. At page 201 the court stated: "The police were reasonably justified in relying on this information because it came from an official source. . . . Defendant, however, would deprecate the reliability of the information because it passed through several hands before it reached Officer MacGregor. The fact that the information did not come from the informant directly to the officer who made the arrest does not prevent reliance on its trustworthiness since it reached him through official channels. The arrest of Hood was therefore legal."

On the oral argument, on the suggestion of this court, the point was raised for the first time that reversible error might have been committed by the sustaining of objections to questions seeking the identity of certain of the confidential informants. This question about the refusal to disclose the name of the informers is a most serious one, and has been discussed in many cases. If the problem involved in those cases were here involved, a most serious question would be

presented. But we do not think it is involved under the circumstances of this case. That is so for the following reasons:

At the trial it was stipulated by all concerned that in addition to the testimony already introduced at the trial the transcript at the preliminary hearing could be considered by the trial court on the issue of the claimed unlawful search and seizure. The record at the preliminary shows that Officer McBee testified as to certain information that he had secured from certain informers and about the use of the informer on May 31, 1956, to make a buy at the premises in question. The record shows that counsel for appellant on cross-examination of McBee sought to secure the names of these informers. The witness and prosecutor claimed privilege. They were sustained by the court, the judge refusing to compel the divulging of this information. It may be assumed that these rulings were erroneous when made.

Thereafter, the appellant sought a writ of prohibition challenging the validity of the arrest and of the search and seizure. In that proceeding before the other division of this court appellant did not in any way discuss or raise the question as to the validity of these rulings. The court denied the application for the writ.

The case then proceeded to trial. Inspector Braumoeller of the State Bureau of Narcotic Enforcement testified, as already pointed out, that he had received a telephone call on March 21, 1956, from an informer, deemed to be reliable, telling him that Gorg and Fontaine were dealing in marijuana at their apartment, and giving Braumoeller the other information described in the first part of this opinion. The information so secured started the police on their surveillance of the apartment and constituted part of the information upon which the search, seizure, and arrest were subsequently made. In his cross-examination of Braumoeller counsel for appellant made no demand at all for the name of the informer.

After appellant was convicted, on this appeal, in his opening and closing briefs, not one word was said about the failure of the court to compel the disclosure of the identity of the informants. The first time that the point was mentioned, after the preliminary hearing, was when this court requested that the point be briefed when the cause was first placed on the calendar for oral argument in August of 1957.

Under these circumstances; even if it be assumed that appellant was entitled to the name of the informer when requested at the preliminary hearing, and that it was error to deny it,

such error has clearly been waived. The law gives one aggrieved at the preliminary hearing the remedy of a motion under section 995 of the Penal Code and the application for a writ of prohibition. Appellant availed himself of these remedies, but did not see fit to raise the point under discussion at that time. That is the time the law contemplates the preliminary proceedings should be challenged. Then, at the trial, appellant saw fit to permit Braumoeller to testify about the informer without challenge. There was nothing objectionable *per se* in the testimony about the information secured from the informers. Such testimony, although hearsay, is admissible hearsay. (*People* v. *King,* 140 Cal.App.2d 1 [294 P.2d 972].) Unless, on cross-examination, a request is made for the identity of the informer on penalty of having the evidence stricken, there is nothing upon which the trial court can rule. The evidence is admissible, and is alone sufficient to warrant the arrest and search. No objection to it was made. It is now too late to make the objection at this late date. ▆ It is well settled that if the accused does not request the name of the informer at the preliminary or at the trial, the failure to disclose the informer's identity is waived and cannot be raised by writ or appeal. (*Lorenzen* v. *Superior Court,* 150 Cal.App.2d 506 [310 P.2d 180]; *Robison* v. *Superior Court,* 49 Cal.2d 186 [316 P.2d 1].) The same rule applies when the request is made at the preliminary and denied, and the appellant does not see fit to challenge it by motion or by writ, or by his briefs on appeal. Whatever rights appellant may have had were waived. The fact that appellant apparently believed that he had waived this point, or that it was unimportant, is substantiated by the fact that in his opening and closing briefs the point was not raised or discussed. The failure to pursue the issue, and his failure to .make any request for the name of Braumoeller's informant constituted a waiver of any right that he may have possessed for the disclosure of the identity of the informer.

▆ The last point raised by appellant is that the search was illegal because based on a warrant for a search of the premises occupied by Fontaine, and a search was made of the bedroom occupied by Gorg. It is contended that a warrant issued in the name of one tenant of a house does not authorize the officers to search those parts of the premises not occupied by the person named in the warrant. Otherwise, so it is contended, the warrant would be a ''blanket'' search warrant

and void. (See *Williams* v. *State,* 95 Okla.Crim. 131 [240 P.2d 1132, 31 A.L.R.2d 851].)

There are two answers to this contention. The first is that, independent of the warrant, the officers, for reasons already stated, had reasonable grounds upon which to make the arrest and search without a warrant. Therefore, even if the search warrant were void, which it was not, the arrest and search can be justified on these facts known to the officers. In the second place, the warrant was not void. It was issued for a search of the lower flat in question, and Fontaine was named as the one occupying the named premises. Actually three people lived in this flat, sharing the living room, kitchen, bath and halls. The three bedrooms opened on these rooms and were not locked. All of the rooms constituted one living unit.

While a search warrant for one building on a tract of land occupied by a named person will not justify a search of another separate building on the same tract of land occupied by another person (*Combs* v. *State,* 94 Okla.Crim. 206 [233 P.2d 314]; *Wallace* v. *State,* 89 Okla.Crim. 365 [208 P.2d 190]), and will not justify a search of a separate floor of the same building occupied by an unnamed tenant (*Linthicum* v. *State,* 66 Okla.Crim. 327 [92 P.2d 381]; *United States* v. *Innelli,* 286 F. 731), such rule only applies where there are separate and distinct living quarters occupied by different persons. A rule of reason must be applied. Here the living unit was one distinct unit occupied by three persons. When the police, pursuant to the warrant, searched the living room and found marijuana, and then searched Fontaine's bedroom and found marijuana, they acted as reasonable and prudent men in searching the other two bedrooms that were unlocked and an integral part of the same living quarters.

The appeals from the order denying the motion for a new trial and from the judgment of conviction are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 9, 1958. Carter, J., was of the opinion that the petition should be granted.