[Crim. No. 3739. First Dist., Div. One. Dec. 5, 1960.]

THE PEOPLE, Respondent, v. EUGENE HORN, Appellant.

James Hammond, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Joseph I. Kelly, Deputy Attorneys General, for Respondent.

TOBRINER, J.—[ ] Under section 11557 of the Health and Safety Code the prohibition of unlawfully opening and maintaining ''any place for the purpose of unlawfully selling, giving away or using any narcotic'' describes a ''purpose'' which contemplates continuity in the pursuit of such objectives. In a prosecution for unlawful possession of narcotics in which appellant did not admit his knowledge of the narcotic nature of the substance, he may properly be questioned as to the facts of a former conviction, including the type of narcotic there involved. These, and related issues, we discuss *infra*.

Appellant appeals from conviction on two counts: violation of section 11500 (possession of a narcotic) and section 11557 (maintaining a place for selling, giving away, or using a narcotic) of the Health and Safety Code. The first count charged that on the 4th day of December, 1958, appellant ''did unlawfully have in his possession a narcotic. . . .'' In its second count the information alleged that on the same day he ''did unlawfully open and maintain a place for the purpose of unlawfully selling, giving away, and using a narcotic.'' After a jury trial, the court entered a judgment of conviction on both counts.

Appellant urges the following propositions on appeal: (1) the evidence was insufficient to support the conviction for violation of section 11557; (2) the court erred in requiring appellant, after prior truthful answers, to answer respondent's detailed inquiry regarding prior felony convictions; (3) the court erred in requiring appellant to answer respondent's inquiry whether appellant was, or ever had been, addicted

to the use of narcotics; and (4) the court erred in admitting into evidence certain records of the San Francisco County Hospital. After briefly setting forth the facts, we shall analyze each of these contentions.

Police Officers Simpson and Christiansen, attached to the Bureau of Narcotics in the San Francisco Police Department, testified that they had maintained for about six weeks prior to December 4, 1958, a loose surveillance of the premises of an apartment at 977 Folsom Street, San Francisco. Since the middle of October this apartment had been rented to ''Mr. and Mrs. Horn.'' On the evening of December 4, at about 11:15 p.m., the officers entered the apartment house and stationed themselves outside the door to Room Number 3, overhearing a conversation within the apartment and someone saying, ''Give me the next fix.''

The officers recognized that the statement contained a term used by narcotic addicts. They testified that they knocked on the door; someone from within asked who was there. Officer Christiansen answered, ''Tommy, from Oakland.'' The officers heard movements within; they identified themselves as policemen, and they forced open the door. Inside the room they observed five or six people. Officer Simpson testified that appellant made his exit from the room through the front window.

According to the officers, they found several articles used to inject narcotics, including a spoon, moist cotton ball, three rubber finger stalls, three measuring spoons, a safety pin, matchbook covers rolled up in the form of a bindle, a hypodermic syringe and needle, and an empty bottle with a label reading ''methedrine.'' They found no narcotics. A chemist testified that one spoon contained a residue of narcotics. The officers stated that an examination of the remaining occupants of the room indicated that, in the officers' opinion, the occupants had recently used a narcotic.

The officers made a search of all the hospitals in San Francisco, found appellant in the San Francisco County Hospital registered in the name of Cecil Shields, and later arrested him. After his arrest, on the way to the Hall of Justice, appellant told the officers that he had used the pseudonym because he did not ''want them to know who he was'' and that he had jumped out the window ''to get away,'' and that he had lost five spoons of heroin when he jumped. Over objection of appellant's counsel, the court admitted into evidence the records of San Francisco County Hospital regarding appellant as well

as letters and envelopes addressed to, or mentioning the name of, appellant, which the officers found in the apartment.

Appellant's version of the facts consisted of testimony that on the evening of December 4, 1958, he went to visit friends living in the 1200 block of Pine Street, San Francisco. The friends were not home; appellant, in descending the steps in front of their house, fell and broke his heel. A friend drove him to the hospital where he registered under the name of Cecil Shields. Appellant denied having been at the apartment at 977 Folsom Street on the evening of December 4, 1958. According to appellant, the Folsom Street apartment was rented to Betty Jean Jones, a friend whom he sometimes visited.

On cross-examination the prosecutor questioned appellant regarding two prior felony convictions, one for burglary and one for the sale and possession of narcotics. He admitted both convictions. Then, over objection of defense counsel, the court required appellant to answer questions concerning his plea in the former case, the place of conviction, the narcotic involved and the Federal act violated. Again over objection, appellant, when asked if he was addicted to narcotics on December 4, 1958, or at any previous time, admitted taking the cure for a previous addiction.

We turn to the first position of appellant that the evidence does not sufficiently sustain a conviction under section 11557 since he did not "open or maintain" the apartment for the prohibited purposes.

The statute provides that, "It is unlawful to open or maintain any place for the purpose of unlawfully selling, giving away or using any narcotic." The proscribed "purpose" is one that contemplates a continuity of such unlawful usage; a single or isolated instance of the forbidden conduct does not suffice. Moreover, despite the prosecution's contrary argument, the requirement of a purpose for such sequential use is not limited to maintenance; it embraces both opening and maintenance. To "open" the place for a single sale or use is no more covered by the statute than to maintain it for such singular purpose; the Legislature set up no such artificial distinction. It obviously condemned either opening or maintaining for the purpose of repetitious or successive unlawful conduct.

The extent of the prohibition in this respect is set forth in the decision of Justice Dooling in *People* v. *Holland* (1958), 158 Cal.App.2d 583 [322 P.2d 983], which describes the required character of both the illicit "opening" and "maintaining" set forth in the statute. The only competent evidence

introduced in that case revealed that on *one* occasion the police gave an informant money to buy narcotics from defendant, that the informant, while under the continuous surveillance of the police, went to the defendant's barbecue stand, talked to defendant, and returned with a package of narcotics and no money. The appellate court reversed the conviction for maintaining a place for sale of narcotics in violation of section 11557, saying: "There is no evidence that this barbecue stand was opened for the prohibited purpose. To constitute the offense of 'maintaining' there must be some purpose of continuity in the use of the place for the proscribed illegal conduct. . . . [E]vidence of a single, isolated instance of the sale of narcotics, standing alone, without any other corroborating circumstances of which the defendant is shown to have any knowledge, is not legally sufficient to prove that he was 'maintaining' the place at which the single sale was made for the purpose of selling narcotics." (Pp. 588-589.)

Quoting from *People* v. *Mehra* (1925), 73 Cal.App. 162 [238 P. 802], which involved the analogous situation of a conviction for maintaining a common nuisance under the Volstead Act, the court in the Holland decision points out the criteria for determining continuity of use: " ' [T]here must be shown to establish the fact of maintaining a common nuisance, a series of sales or a single sale, accompanied by such attendant circumstances as reasonably raise the inference of the purpose for which the possession of the intoxicating liquor is had, or possession, in connection with surrounding circumstances, such as the large quantity of liquor on hand, the various kinds of liquor, the containers in which it is kept, the character of the place, the manner in which it is fitted up, the use of passwords in gaining access to the premises, evidence of people visiting the place in unusual numbers or at unusual times, all of which may reasonably raise the inference of a purpose to sell and sufficiently support the charge of maintaining a common nuisance.' " (P. 588.) (See also *People* v. *Calvert* (1926), 80 Cal.App. 50 [251 P. 244]; *People* v. *Cannon* (1957), 148 Cal.App.2d 163 [306 P.2d 589].)

In this case appellant contends that respondent produced no substantial evidence indicating that the apartment was used for the selling, giving away or using of narcotics on any occasion other than December 4, 1958. ▮ The following facts, upon which respondent relies to establish the required continuity, fail to do so: (1) "[T]hat five of the occupants of the appellant's apartment were found with old and new

needle marks on their arms while under the influence of narcotics; . . ." While this statement may be true, it demonstrates no more than that the five people had recently used narcotics and had used them at some time in the past. (2) "[T]hat a couple of the occupants, including one woman who lived there permanently, were established to be narcotic addicts; . . ." No evidence shows that any of the occupants were current addicts. (3) "[T]hat the stoveless kitchen was in a shabby condition, and the bedroom was dirty and neglected; . . ." This is a neutral factor. (4) "[T]hat a large quantity of narcotics was on hand; . . ." The record does not support the assertion; the only narcotic found consisted of a slight residue in one spoon. (5) "[T]hat numerous articles found in the apartment were closely associated with narcotics addiction; . . ." It is true that the officers discovered several articles used in injecting narcotics, but there is no showing that they were used on more than one occasion. (6) "[T]he use of a password to gain admission to the premises; . . ." The record does not support this statement. The officers attempted to gain admission by using a "Tommy, from Oakland" ruse, but they failed to gain admission and resorted to forcing the door. (7) "[A]n occupant of the room was asking for 'the next fix,' as the officers approached the door. . . ." The record supports the statement but indicates no more than that on one occasion occupants used narcotics within the apartment.

Respondent produced no evidence showing that the appellant, or anyone else, opened or maintained the apartment for the sale, giving away, or using of narcotics, or any events other than those that occurred on the one occasion of December 4, 1958. The conviction on that count must therefore be reversed.

We turn now to the second issue: whether the court properly allowed the prosecutor to cross-examine appellant regarding prior felony convictions. Appellant contends that the prosecution could not properly elicit the circumstances of a prior narcotics conviction.

Knowledge of the narcotic nature of the object possessed constitutes an essential element of the crime of possession of narcotics, and the prosecution must establish that a defendant entertained such knowledge. (*People* v. *Winston* (1956), 46 Cal.2d 151, 161 [293 P.2d 40]; *People* v. *Bean* (1957), 149 Cal.App.2d 299, 302 [308 P.2d 27]; *People* v. *Ballard* (1956), 145 Cal.App.2d 94, 98 [302 P.2d 89]; *People* v. *Denne* (1956), 141 Cal.App.2d 499, 510 [297 P.2d 451].)

Even if a defendant has not denied his knowledge of the narcotic nature of the substance in his possession, the prosecution must still carry the burden on this issue.

In order to prove knowledge of the character of the narcotic, the prosecution, according to the decisions, may introduce evidence of crimes of a similar nature. Thus in *People* v. *Castellanos* (1958), 157 Cal.App.2d 36 [320 P.2d 152], when a defendant admitted on arraignment a prior conviction for possession of a narcotic, the trial court allowed the district attorney to read to the jury the information in the prior case for the purpose of showing defendant's knowledge of narcotics. In upholding the admission of the evidence, the court stated: "Evidence of other acts of a similar nature and of other crimes is admissible in evidence when not too remote, to show defendant's knowledge of the narcotic nature of the object possessed." (P. 39.) Likewise, in *People* v. *Tabb* (1955), 137 Cal.App.2d 167 [289 P.2d 858], upon defendant's admission of a slight acquaintance with marijuana, the prosecutor, to prove defendant's knowledge more than slight and to establish his cognizance of the substance, questioned him concerning terms used in reference to narcotics. The court found no error in the admission of the testimony. We cannot concur in appellant's attempted distinction of the Tabb case premised on the fact that, there, appellant's "evasive answers or implications" justified the prosecutor's interrogations whereas that evasiveness did not occur here; the opinion does not narrow the ruling to that issue.

It is true that an admission of a defendant that he does know the nature of the substance may preclude evidence of a prior conviction. Thus in *People* v. *Spencer* (1956), 140 Cal.App.2d 97 [294 P.2d 997], defendant specifically admitted his knowledge of the narcotic nature of heroin; nevertheless, the prosecution introduced evidence of a prior misdemeanor conviction. The court stated: "Since it was already clear that knowledge of the narcotic character of heroin was not in issue there was no reason, and no justification, for the admission of this evidence with the attendant danger of its misuse by the jury despite the cautionary instruction of the court." (P. 105.)

In the instant case we probe a situation in which appellant did not admit his knowledge of the nature of a narcotic substance; the issue remained to be proved by the prosecution. Consequently, in order to prove that appellant knew the nature of heroin, the substance which was here involved, the

prosecution could properly question him as to the circumstances of, and the type of narcotics involved in, the prior crime.

In any event, even assuming that the admission of the additional testimony regarding the prior conviction was improper, we cannot conclude that it was prejudicial. This, unlike *People* v. *Spencer, supra*, 140 Cal.App.2d 97, was not a "close case" (p. 105) ; the record, considered as a whole, shows the contrary. In passing upon an analogous question, *People* v. *Tubby* (1949), 34 Cal.2d 72, 79 [207 P.2d 51], states: "It is impossible to believe that the defendant was prejudiced in any way by the single additional question as to where the defendant was convicted." In the light of this record we must likewise find that the additional questions here propounded as to the prior conviction did not prejudice appellant.

Appellant thirdly contends that the interrogation "regarding his prior addiction to narcotics was degrading, immaterial, and highly prejudicial error." The basic reasoning which we have set out as to the proof of appellant's knowledge of the narcotic substance involved in prior convictions bears upon this issue. While appellant's prior addiction and use of narcotics would not be relevant to the issue of whether or not he possessed narcotics on December 4th, such evidence would relate to appellant's knowledge of the nature of narcotics.

Thus in *People* v. *Gin Hauk Jue* (1949), 93 Cal.App.2d 72 [208 P.2d 717], upon defendant's denial of knowledge of narcotics, the court upheld as exhibiting such knowledge, testimony on cross-examination disclosing defendant had been a user of narcotics for several years. Similarly, in *People* v. *Perez* (1954), 128 Cal.App.2d 750 [276 P.2d 72], the court declared that "[p]rior addiction to marijuana would be relevant to the issue of 'guilty knowledge' of marijuana's nature. . . ." (P. 756.)

Appellant's final allegation of error by the trial court involves the admission of the hospital records. Immediately prior to the offer of the records the prosecution asked of the witness, a staff nurse who took care of appellant, whether "your records disclose that the defendant received any intravenous hypodermic needles during his stay at the hospital?" The court sustained an objection to this question as calling for hearsay. Upon the prosecution's offer of the hospital records appellant objected upon the ground that they were "incompetent, irrelevant and immaterial," and that "they

have no bearing'' on ''the two charges against the defendant. . . .'' The court overruled the objection.

Sometime later, after the admission of the records, appellant submitted a further objection upon the hearsay ground that the entries ''were not made in her [the nurse's] handwriting.'' Pointing out that there was ''testimony that some of these entries are in her own handwriting'' and that, in any event, the records had already been admitted over the objection of relevancy, the court held the hearsay objection ineffective and tardy. As we shall point out, we do not find prejudicial error in the court's admission of the records, since appellant failed to object in the trial court upon the grounds now urged.

 The decisions hold that if the party charging error makes no objection to the admission of evidence at trial, he cannot assert error on appeal. (*People* v. *Millum* (1954), 42 Cal.2d 524, 528 [267 P.2d 1039]; Witkin, California Evidence, § 700, p. 732.) Moreover, the court in *Rupp* v. *Summerfield* (1958), 161 Cal.App.2d 657, 662 [326 P.2d 912], declares that '' [a]n objection specifying the wrong grounds, or a general objection, amounts to a waiver of all grounds not urged.'' In that case appellant objected to the admission of a transcript of the preliminary hearing on the grounds that the testimony therein was ''wholly irrelevant and immaterial to this issue here.'' (P. 661.) The court overruled the objection. On appeal appellant asserted the hearsay nature of the evidence. The court, in ruling that appellant had waived his objection, stated: ''It is well-settled that an objection to evidence upon the ground that it is incompetent, irrelevant and immaterial is too general to include the objection that it calls for hearsay.'' (P. 662.)

 Faced with a situation in which an appellant had objected to the admission of hospital records on the wrong grounds, this court, speaking through Justice Bray, in *Frampton* v. *Hartzell* (1960), 179 Cal.App.2d 771 [4 Cal.Rptr. 427], recently upheld the admission of the records: '' '[E]rror cannot be predicated on the overruling of an objection when the *particular grounds* of the objection are not stated, unless they are obvious, or otherwise known to the court. ''To entitle an objection to notice, it must not only be on a material matter, affecting the substantial rights of the parties, but its point must be particularly stated. This is not only a statutory regulation, but it is the uniform rule, so far as we are aware, of all Courts of Record. The party, as the authorities say, must lay

his finger on the point of his objection to the admission or exclusion of evidence.'' ' '' (P. 775; emphasis added.) (*Kirkpatrick* v. *Tapo Oil Co.* (1956), 144 Cal.App.2d 404, 411 [301 P.2d 274].)

Appellant cannot successfully contend here that, although he urged the general objection of irrelevancy, the specific reason for the objection was ''obvious, or otherwise known to the court.'' Appellant's counsel objected on general grounds and added: ''As far as the two charges against the defendant, they [the exhibits] have no bearing''; obviously, counsel thought and urged that the records were irrelevant to the case. Counsel did not indicate that hearsay constituted the true basis of the objection. Because the records were relevant, and appellant does not deny that fact here, the court properly overruled appellant's objection. Since defense counsel urged an improper objection, which the court overruled, appellant cannot assert on this appeal alleged error in the admission of the records. Finally, even assuming error by the trial court, we do not believe that the admission of the records could possibly have been prejudicial; the records could have had only a peripheral rather than a crucial effect upon the issue of guilt. (Cal. Const., art. VI, § 4½.)

We affirm the judgment as to Count I and reverse the judgment as to Count II.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied December 23, 1960, and the petitions of appellant and of respondent for a hearing by the Supreme Court were denied January 31, 1961.