TO BE PUBLISHED IN THE OFFICER REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION : | No. 90-807 |
| of : | |
| : | MAY 8, 1991 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| RONALD M. WEISKOPF : | |
| Deputy Attorney General : | |
| : | |

_____

THE HONORABLE MICHAEL D. BRADBURY, DISTRICT ATTORNEY, COUNTY OF VENTURA, has requested an opinion on the following question:

If a parcel of land with a residence is used to cultivate marijuana for sale, but there is no evidence concerning where the marijuana is sold, is the property subject to forfeiture?

CONCLUSION

If a parcel of land with a residence is used to cultivate marijuana for sale, but there is no evidence concerning where the marijuana is sold, the property would not be subject to forfeiture without proof of additional evidence.

ANALYSIS

Health and Safety Code section 11470[1] makes certain types of property subject to forfeiture when used in connection with the violation of various provisions of the California Uniform Controlled Substances Act (§§ 11000-11651). Subdivision (g) of section 11470 provides for the forfeiture of:

"Real property related to a violation, whether charged or not, of Section 11366, 11366.5, 11366.6, or 11379.6."

_____

[1]All section references are to the Health and Safety Code unless otherwise specified.

We are asked whether land with a residence[2] on which marijuana is cultivated for sale would be subject to forfeiture under section 11470, subdivision (g), if there is no evidence concerning where the marijuana is actually sold.[3]  The question particularly arises because the statute which prohibits the cultivation of marijuana, section 11358,[4] is not mentioned as a basis for forfeiture under the terms of section 11470.  We conclude that additional evidence would be necessary to subject the land to forfeiture.

To answer the question presented, we look to the provisions of those sections specified in section 11470, subdivision (g), to wit, sections 11366, 11366.5 and 11379.6.[5]

1.    Section 11366

Section 11366 provides:

"Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using any controlled substance which is ... specified in paragraph (13) ... of subdivision (d) of Section 11054 ... shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison."

The section thus makes it illegal to maintain any place for the purpose of unlawfully selling marijuana.[6]  Does a person who cultivates marijuana for sale violate the statute if there is no evidence of where the sale of the marijuana takes place?

---

[2]Subdivision (g) of section 11470 grants a limited exemption for "real property which is used as a family residence."  We are not asked to construe this language and need not do so in this opinion, particularly in light of the conclusion reached.

[3]This situation is not an uncommon occurrence with the cultivation of marijuana because sale of a harvested crop often occurs other than where it is grown.  Nonetheless, though direct evidence of actual sale is lacking, circumstantial evidence can raise an inference that the marijuana is being cultivated for the purpose of sale. (Cf. *People* v. *Eckstrom* (1986) 187 Cal.App.3d 323, 330-332 [an intent to sell marijuana in violation of section 11359, possession for sale, can be proved by circumstantial evidence, such as the large quantity of the crop; no evidence of an actual sale is necessary]; see also, *People* v. *Douglas* (1987) 193 Cal.App.3d 1691, 1694-1695 [possession of marijuana for sale shown by surrounding circumstances]; *People* v. *Mehra* (1925) 73 Cal.App. 162, 170-171 [a purpose to sell contraband at a particular place can be shown by inference raised from circumstantial evidence about the place and the amount of contraband found there].)

[4]Section 11358 provides:  "Every person who plants, cultivates, harvests, dries, or processes any marijuana or any part thereof, except as otherwise provided by law, shall be punished by imprisonment in the state prison."

[5]Section 11366.6 does not concern marijuana and thus need not be examined.

[6]Marijuana, or Cannabis sativa L. (§ 11018), is the controlled substance that is specified in paragraph (13) of subdivision (d) of section 11054. (See *People* v. *Hamilton* (1980) 105 Cal.App.3d 113, 116-117; *People* v. *Van Alstyne* (1975) 46 Cal.App.3d 900, 909-918; cf. § 11007 [definition of controlled substance].)

The major issue to be resolved is whether section 11366 is site specific, that is, whether it requires the sale of the marijuana to take place on the particular property in question. If it does, then a violation of the section cannot be proved when there is no evidence establishing the location of the sale. We believe that section 11366 is site specific.

Section 11366 speaks in terms of "maintain[ing] any place for the purpose of unlawfully selling, giving away, or using [marijuana]." The relationship between the proscribed activity and the location is evidenced by the wording of the section itself. (Cf. *People* v. *Holland* (1958) 158 Cal.App.2d 583, 588 ["To constitute the offense of `maintaining' there must be some purpose of continuity in the use of the place for the proscribed illegal conduct."].) This stands in contrast to the language of other sections of the Uniform Controlled Substances Act which describe offenses involving the sale of marijuana where location is not mentioned. (See, e.g., §§ 11359 [possession for sale]; 11361 [employing a minor in unlawfully selling]; 11360, subd. (a) [selling]; cf. *People* v. *Roeschlaub* (1971) 21 Cal.App.3d 874, 877 ["for the latter no particular place need be involved and one could be guilty of selling ... although not maintaining a particular place for such sales...."]; *People* v. *Mehra*, *supra*, 73 Cal.App. 162, 171; see also *People* v. *Cannon* (1957) 148 Cal.App.2d 163, 168.)

Section 11366 is similar to statutes dealing with a "nuisance" stemming from the repetitive occurrence of illegal activity at a particular place, and that is different from statutes proscribing the activity itself. (See *People* v. *Roeschlaub*, *supra*, 21 Cal.App.3d at 877-878; *People* v. *Holland*, *supra*, 158 Cal.App.2d at 587-588; *People* v. *Cannon*, *supra*, 148 Cal.App.2d at 168; *People* v. *Mehra*, *supra*, 73 Cal.App. at 171.) In section 11366 the Legislature "obviously condemned either opening or maintaining [a place] for the purpose of repetitious or successive unlawful conduct" (*People* v. *Horn* (1960) 187 Cal.App.2d 68, 72), and the intended gravamen of the section is the providing of a place where that illegal conduct may occur. (Cf. *People* v. *Green* (1988) 200 Cal.App.3d 538, 544 ["[S]ection 11366 ... can be violated ... merely by providing a place for drug abusers to gather and share their experience."].)

We believe that for a violation of section 11366 to be established in our situation, it must be shown that the marijuana is sold where it is cultivated. In addition, it would be necessary to show that the site is being maintained for the purpose of those sales. (Cf. *People* v. *Roeschlaub*, *supra*, 21 Cal.App.3d at 877 ["if the evidence in the particular case showed that defendant sold the contraband at a place he maintained for that purpose"]; *People* v. *Mehra*, *supra*, 73 Cal.App. 162, 172 ["Even where the statute provides that the unlawful possession of intoxicating liquor is prima facie evidence that such intoxicating liquor is possessed for the purpose of unlawful sale or disposition, the presumption does not arise that the place or establishment where the liquor is kept, is conducted as a common nuisance, or is maintained as a place for the unlawful sale of intoxicating liquor"].)

Our conclusion is supported by cases allowing circumstantial evidence to show that a person is maintaining a place for the purpose of selling a controlled substance. They are all site specific with respect to the proscribed activity. (See e.g., *People* v. *Roeschlaub*, *supra*, (1971) 21 Cal.App.3d 874, 878 [apartment]; *People* v. *Horn*, *supra*, (1960) 187 Cal.App.2d 68, 72-74 [apartment]; *People* v. *Clay* (1969) 273 Cal.App.2d 279, 283-284 [house]; *People* v. *Holland*, *supra*, 158 Cal.App.2d 583, 588 [barbeque stand]; *People* v. *Cannon* (1957) 148 Cal.App.2d 163, 167-168 [apartment]; cf. *People* v. *Mehra*, *supra*, 73 Cal.App. at 170-171 [house].) We are unaware of any

case which involved a conviction for maintaining a place for the purpose of selling a controlled substance in which sales occurred away from the property.[7]

Accordingly, we conclude that section 11366 may not be shown to be violated without evidence of where the controlled substance is being sold, given away, or used. The statute thus may not be used here to constitute a basis for forfeiture as set forth in section 11470, subdivision (g).

Section 11366.5

Section 11366.5, subdivision (a) provides in part:

> "Any person who has under his or her management or control any building, room, space, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, who knowingly rents, leases, or makes available for use, with or without compensation, the building, room, space, or enclosure for the purpose of unlawfully manufacturing, storing, or distributing any controlled substance for sale or distribution shall be punished by imprisonment in the county jail for not more than one year, or in the state prison."

Three issues arise with respect to the applicability of section 11366.5 to our particular circumstances. First, it is suggested that because subdivision (a) of section 11366.5 speaks of making a "building, room, space, or enclosure" available for use, the "space" must be structural and something less than a "room," which is something less than a "building." An "enclosure" would also need to be structural and actually "enclosed." Thus it is posited, section 11366.5 would not apply to the cultivation of marijuana in an open field.

An "enclosure" is not necessarily structural. Rather, it can refer to real property and apply to land as a place or area "which is confined by a fence or other obstacle, natural or man-made, which separates it from the surrounding area. [Citation.]" (66 Ops.Cal.Atty.Gen. 94, 97 (1983).) Indeed the concept of "enclosure" derives "from the process in English law whereby land could be freed from rights of common by surrounding it with some visible obstruction. [Citations.]" (*Ibid.*; emphasis added.) The notion of "space" is even less confining because it does not require a bounding by a fence or other physical barrier.

On the other hand, it is a well recognized rule of statutory construction that specific terms (e.g., "building" and "room") followed by more general terms (e.g., "space" and "enclosure")

---

[7]We do not mean to suggest that only direct evidence of sales of a crop on the property can show that the property is being maintained for the purpose of selling marijuana. For example, where no evidence of sales is present, more circumstantial evidence about the place can show it to be the type of nuisance section 11366 proscribes, such as "the character of the place, the manner in which it is fitted up, the use of passwords in gaining access to the premises, evidence of people visiting the place in unusual numbers or at unusual times, all of which may reasonably raise the inference of a purpose to sell and sufficiently support the charge of maintaining a common nuisance." (*People* v. *Mehra*, *supra*, 73 Cal.App. at 170-171.) *Mehra* required that the evidence be site specific. Although the case dealt with a nuisance under a different law (the Volstead Act; intoxicating liquor), *Mehra* has been cited as seminal authority in describing what would have to be shown to constitute a violation of the nuisance proscribed by section 11366. (See, e.g., *People* v. *Horn*, *supra*, 187 Cal.App.2d at 73; *People* v. *Holland*, *supra*, 158 Cal.App.2d at 588; cited in turn by *People* v. *Roeschlaub*, *supra*, 21 Cal.App.3d at 878, and *People* v. *Clay*, *supra*, 273 Cal.App.2d at 283.)

restrict the meaning of the latter words. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391; *Martin v. Holiday Inns, Inc.* (1988) 199 Cal.App.3d 1434, 1437; *Swepston v. State Personnel Bd.* (1987) 195 Cal.App.3d 92, 97.) "`The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage."' (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10; see *Sullivan v. Fox* (1987) 189 Cal.App.3d 673, 680.)

Even if this rule of construction did not apply here, a second obstacle arises with respect to section 11366.5. Does the cultivation of marijuana for sale mean that the property is being used "for the purpose of unlawfully manufacturing, storing, or distributing" marijuana? It is suggested that we do not have evidence of "storing" or "distributing" and that "manufacturing" means some type of industrial or mechanical production. As with section 11366, we find that section 11366.5 is site specific in requiring the "manufacturing, storing, or distributing" to take place at "the building, room, space, or enclosure."

"Storing" generally connotes collecting or accumulating as a reserve, for safekeeping, or for preservation. (Webster's New Internat. Dict. (3d ed. 1966) p. 2252.) We believe that additional evidence would be necessary to establish this element besides what has been postulated in the facts presented. The same would be true with regard to the term "distributing." The latter term for purposes of section 11366.5 (see § 11001) means "to deliver ... " (§ 11012), and "deliver" is defined as "the actual, constructive, or attempted transfer from one person to another ..." (§ 11009). We have no evidence here of such a transfer taking place at the location where the marijuana is being cultivated.

The term "manufacturing" is not defined for purposes of section 11366.5. However, we note that section 11029 distinguishes "manufacture" from "planting, cultivation, growing, or harvesting" when it defines "production." In *People v. Jackson, supra*, 218 Cal.App.3d 1493, 1503, the court referred to the term "manufactures" as follows: "Both the dictionary and the common sense, everyday usage ... entail notions of the ongoing and progressive making, assembly or creation of an item by hand or machine." We do not view "manufacturing" as used in section 11366.5 as including the growing of a crop.

Finally, we have not been provided any facts to establish that a "person who has under his or her management or control any building, room, space, or enclosure" has "knowingly rent[ed], lease[d], or ma[de] available for use" the property to another, as required by section 11366.5. Without this additional evidence, a violation of 11366.5 is not established.

Accordingly, section 11366.5 does not provide a basis here for a forfeiture proceeding under the conditions of section 11470, subdivision (g).

3.    Section 11379.6

Subdivision (a) of section 11379.6 provides:

"Except as otherwise provided by law, every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment in the state prison for three, five, or seven years and by a fine not exceeding fifty thousand dollars ($50,000)."

There are two problems with applying section 11379.6 to our situation. One is that it seems to have been directed to the chemical production of controlled substances and not their horticultural production.[8] The other is that prosecution under a general statute, such as this, is precluded if a more specific statute applies (see *People* v. *Jenkins* (1980) 28 Cal.3d 494, 501-504; *People* v. *Superior Court* (Fuller) (1971) 14 Cal.App.3d 935, 946-949), and section 11358 specifically makes it illegal to "cultivate[] ... any marijuana." As previously mentioned, section 11358 is not specified in section 11470, subdivision (g), as a basis upon which forfeiture of property might proceed. But we direct our attention to the first impediment and resolve the matter upon it.

In subdivision (a) of section 11379.6, the prohibited activities are followed by the clause "either directly or indirectly by chemical extraction or independently by means of chemical synthesis." While one who cultivates marijuana "produces" it (§ 11029), is this done by chemical extraction or synthesis?

"Chemical extraction" is the process of removing a particular component of a mixture from others present. An example would be the extraction of resinous THC [tetrahydrocannabinol] or hashish from marijuana. (Cf. §§ 11006.5, 11018; 11054, subd. (d)(13),(20); *People* v. *Van Alystyne, supra*, 46 Cal.App.3d at 910, 915.) "Chemical synthesis" is the production of a new particular molecule by adding to, subtracting from, or changing the structure of a precursor molecule. An example would be the creation of PCP [phenylcyclohexyl piperidine] from PCC [piperidinocyclohexane carbonitrile]. (Cf. § 11055; *People* v. *Jackson, supra*, 218 Cal.App.3d 1493, 1500, 1503-1505.)

Botanically speaking, the cultivation of marijuana involves a production of controlled substances through bio-chemical synthesis by the growing plant. We do not think the Legislature had that in mind when it spoke of "chemical extraction or independently by means of chemical synthesis."

Nonetheless, it may still be argued that only "produces ... directly" is required by section 11379.6, and that neither "chemical extraction" nor "chemical synthesis" need be established for a violation of the statute. It is a general rule of statutory interpretation, however, that "when several words [e.g., "directly" and "indirectly"] are followed by a clause [e.g., "by chemical extraction"] which is as applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." (*Porto Rico Ry. etc. Co.* v. *Mor* (1920) 253 U.S. 345, 348; see also, *Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 659; *Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 496; cf. *Kelly* v. *State Personnel Board* (1939) 31 Cal.App.2d 443, 448.)[9]

---

[8]It is to be noted that while section 11379.6 has been used as the basis of a number of criminal prosecutions, they all have involved the manufacture of a chemical substance. (See e.g., *People* v. *Roe* (1990) 219 Cal.App.3d 1589 [methamphetamine]; *People* v. *Jackson* (1990) 218 Cal.App.3d 1493 [PCP]; *People* v. *Sullivan* (1989) 215 Cal.App.3d 1446 [methamphetamine]; *People* v. *Mason* (1988) 211 Cal.App.3d 299 [methamphetamine]; *People* v. *Alexander* (1986) 178 Cal.App.3d 1258 [methamphetamine].) No reported case has involved use of the section to prosecute the cultivation of marijuana or to secure a forfeiture of real property utilized to do so.

[9]This same principle would apply to the entire phrase "either directly or indirectly by chemical extraction or independently by means of chemical synthesis" as modifying "produces" as well as "prepares."

Moreover, the phrase "either directly or indirectly by chemical extraction" is devoid of commas. That is a specific indication that the Legislature meant for the phrase "by chemical extraction" to apply to both the adverbs "directly" and "indirectly." (Compare *Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920, 927-928 with *Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 329-330; see also *Porto Rico Ry. etc. Co* v. *Mor*, *supra*, 253 U.S. at 348; *Wholesale T. Dealers* v. *National Etc. Co.*, *supra*, 11 Cal.2d at 659.) Consequently, we believe that although cultivating marijuana "produces" it "directly," such production is not "by chemical extraction" (and is not "chemical synthesis") as required by section 11379.6.

This reading of section 11379.6 is the one which more comports with its legislative purpose. When section 11379.6 was enacted in 1985 (Stats. 1985, ch. 3, § 8), section 11358 already specifically made it a felony to cultivate marijuana. Section 11379.6 was not necessary to address that situation, but rather the situation presented by the dangers inherent in the chemical production, processing, and preparation of controlled substances. As explained in *People* v. *Jackson*, *supra*, 218 Cal.App.3d at 1504: "There is more danger during the processing of volatile chemicals than after the [substance being made from them] is finally produced." Thus, the Legislature has expressed not only concern that controlled substances are dangerous in themselves as finally produced, but also for the unique dangers to the general public that arise in the course of their illicit production. (See, e.g., §§ 11640, 11644; *People* v. *Jackson*, *supra*.)[10] Nearly from its inception, section 11379.6 has been associated in the legislative mind with addressing the problem of that chemical production. (Cf. § 11642.)

We therefore find that for a violation of subdivision (a) of section 11379.6 to be established, a production of a controlled substance must take place by either chemical extraction or chemical synthesis. The cultivation of marijuana does not involve such chemical production and it thus would not constitute a violation of section 11379.6 for purposes of the forfeiture provisions of section 11470, subdivision (g).

In summary, we conclude that if a parcel of land with a residence is used to cultivate marijuana for sale, but there is no evidence concerning where the marijuana is sold, the property would not be subject to forfeiture without proof of additional evidence.

\* \* \* \* \*

---

[10]When it established the Clandestine Laboratory Enforcement Program in 1986, the Legislature specifically declared: "[T]here has been a recent and rapid expansion in clandestine laboratories illegally producing a variety of controlled substances ... which pose substantial dangers to the general public from fire, explosion, and the toxic chemicals involved." (§ 11640; Stats. 1986, ch. 1029, § 1.) And it directed the Department of Justice Crime Prevention Center to "prepare and disseminate informational materials on the unique dangers posed by clandestine laboratories and the controlled substances they produce [and to] increase public awareness [of the] health dangers created by the laboratories themselves...." (§ 11644; Stats. 1986, ch. 1029, *supra*.)